IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | 19 C 340 |
| | ) | |
| v. | ) | Judge John Z. Lee |
| | ) | |
| SEBASTIAN DEPTULA, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Sebastian Deptula has filed a *pro se* motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. Deptula, who pleaded guilty to one count of wire fraud in violation of 18 U.S.C. § 1343, contends that his trial counsel was constitutionally ineffective for failing to move to dismiss his indictment and for failing to make certain arguments at his sentencing. For the reasons stated herein, Deptula's motion [1] is denied.

## Factual and Procedural Background

Deptula was charged in two successive federal criminal cases for his involvement in fraud schemes. First, in April 2014, he was charged with bank fraud in No. 14 CR 178. Deptula pleaded guilty in December 2014, admitting that, in 2007, he had fraudulently obtained a mortgage loan. *See* Plea Agreement ¶ 6, No. 14 CR 178, ECF No. 34. Judge John W. Darrah sentenced Deptula to 12 months and 1 day in prison. *See* Judgment, No. 14 CR 178, ECF No. 43. Deptula did not appeal from the judgment or file a motion under § 2255.

After completing that sentence, Deptula was arrested and indicted in the case underlying the present motion, No. 15 CR 188. At the time, Deptula was in the custody of the Department of Homeland Security pending removal from the United States. In No. 15 CR 188, Deptula and nine co-defendants were charged with a wide-ranging scheme involving credit-card fraud, consumer-loan fraud, and insurance fraud. *See* Plea Agreement ¶ 6, No. 15 CR 188, ECF No. 297. Additional participants in the scheme were charged in a separate case, *United States v. Cwynar, et al.*, No. 16 CR 637.

As the case went on, Deptula's counsel filed several trial demands under the Speedy Trial Act. *See* No. 15 CR 188, ECF Nos. 121, 156, 226. The district judge denied each of these motions. *See* No. 15 CR 188, ECF Nos. 134, 162, 229.

In February 2017, Deptula entered into an agreement to plead guilty to one count of wire fraud in violation of 18 U.S.C. § 1343. In the agreement, he admitted to leading at least twenty participants in a scheme that lasted from January 2010 until his initial arrest in April 2014. Plea Agreement ¶ 6, No. 15 CR 188.

The scheme consisted of three elements. First, Deptula recruited various individuals for a "credit card bust-out fraud," in which he would obtain personal information from recruits, apply for credit cards on their behalf using false information, and direct them to "rapidly make purchases with the credit cards at or near" the credit limits. *See id.* ¶ 6A. Additionally, to avoid detection, Deptula generally instructed participants to purchase new laptop computers, which he would use to apply for the credit cards and then return to the stores. *See id.* Deptula told

2

his recruits that they should declare bankruptcy rather than paying off the accrued debt. *See id.* Deptula generally demanded that participants pay him with goods, cash, or cash equivalents equal to a percentage—typically twenty percent—of the credit limit for each card. *See id.*

By the summer of 2012, Deptula had enhanced the scheme through the use of shell corporations and mobile payment processing devices. *See id.* Essentially, Deptula directed some participants to form Illinois corporations and open corporate bank accounts; the participants' fraudulently obtained credit cards were then used to make false purchases, depositing the proceeds into the accounts. *See id.* The funds were then withdrawn by Deptula and his co-participants. *See id.*

The second type of fraud in Deptula's scheme involved making false statements in consumer loan applications to procure unsecured personal loans and motor vehicle loans. *See id.* ¶ 6B. In these applications, Deptula made false statements about the applicants' creditworthiness. *See id.* Deptula then demanded portions of the loan proceeds or asked participants to transfer possession of the motor vehicles to him. *See id.* Several participants discharged their fraudulently accumulated debt through bankruptcy. *See id.*

Finally, Deptula led participants in committing insurance fraud with respect to the fraudulently obtained motor vehicles. *See id.* ¶ 6C. When participants purchased luxury automobiles using false information, Deptula directed them to purchase insurance policies covering damage to the vehicles, including damage from vandalism. *See id.* Deptula would then direct participants to transfer possession of

3

the vehicles to him, and he or someone else would damage the interiors of the vehicles. *See id.* Deptula would then tell the owners to file insurance claims for the damage, falsely claiming that it was caused by an unknown vandal. *See id.*

In the plea agreement, the parties set forth their respective positions as to Deptula's sentencing guidelines calculation. First, the parties agreed that Deptula's base offense level was 7. *See id.* ¶ 9(b)(i). Additionally, they agreed that a two-level increase was appropriate under USSG § 2B1.1(b)(2) because the offense involved at least ten victims, and a four-level increase was appropriate under § 3B1.1(a) because Deptula was an organizer or leader of a criminal activity involving more than five participants. *Id.* ¶¶ 9(b)(iii), (vi). Furthermore, the Government maintained—over Deptula's disagreement—that an 18-level increase was appropriate under § 2B1.1(b)(1)(J) to account for losses of over $3.5 million; that a two-level increase was appropriate under § 2B1.1(b)(9)(B) because the offense involved misrepresentations made in bankruptcy proceedings; and that a two-level increase under § 2B1.1(b)(10)(C) was warranted because the offense was committed using sophisticated means. *Id.* ¶¶ 9(b)(ii), (iv)–(v). The Government conditionally agreed that reductions under § 3E1.1 may be appropriate for acceptance of responsibility. *Id.* ¶¶ 9(b)(vii)–(viii). Finally, the Government contended that, due to Deptula's prior conviction in No. 14 CR 178, his criminal history category was II. *Id.* ¶ 9(c).

Assuming that Deptula would get credit for acceptance of responsibility, the Government anticipated a guidelines range of 135 to 168 months of imprisonment, corresponding to an offense level of 32 and a criminal history category of II. *See id.*

¶ 9(d).  A presentence investigation report ("PSR") drafted by a probation officer arrived at the same calculation.  *See* PSR, No. 15 CR 188, ECF No. 312.  The Government advocated for a sentence at the high end of this range.  *See* Tr. of Sentencing at 39:4–13, No. 15 CR 188, ECF No. 423.

In his sentencing memorandum, Deptula contested the loss amount calculated by the Government and the probation officer, contending that it improperly included $2.2 million attributable to the defendants in the *Cwynar* case.  *See* Def.'s Sentencing Mem. at 1–2, No. 15 CR 188, ECF No. 353.  Deptula argued that this amount could have been, but was not, included in his indictment in No. 14 CR 178; he advocated for a lower loss amount of $1.1 million.  *See id.* at 2.  Furthermore, Deptula argued—despite having admitted otherwise in his plea agreement—that the offense involved fewer than ten victims.  *See id.* at 3–4.  He also contended that his criminal history category should not take account of his conviction in No. 14 CR 178 since the cases could have been combined.  *See id.* at 4.  That said, Deptula's sentencing memorandum did not object to the Government's proposed increases for misrepresentations in bankruptcy proceedings or the use of sophisticated means.  All told, Deptula contended that a sentence of 48 months would be appropriate.  *See* Tr. of Sentencing at 36:9–13, No. 15 CR 188.

At the sentencing hearing, Judge Samuel Der-Yeghiayan made rulings as to the parties' disputes over the guidelines calculations and the sentencing factors under 18 U.S.C. § 3553(a).  First, defense counsel elaborated on Deptula's objection to the Government's loss calculation, including the fact that the PSR relied on the

5

Government's figures and included the amounts attributable to the *Cwynar* defendants. *See* Tr. of Sentencing at 6:13–10:13, No. 15 CR 188. In rejecting those arguments, Judge Der-Yeghiayan noted that the losses in the *Cwynar* case were reasonably foreseeable from Deptula's consumer-fraud scheme and had not been attributed to him in No. 14 CR 178. *See id.* at 21:21–22:25. Judge Der-Yeghiayan explained:

> [D]espite [D]efendant's argument that the 2014 case he was charged in contained the same allegations as the *Cwynar* case, the 2014 case was unrelated to the *Cwynar* case. The 2014 case the defendant was charged in involved mortgage fraud while the *Cwynar* case and the present case involved the same complex scheme which is unrelated to the prior mortgage fraud.

*Id.* at 22:23–23:4. Judge Der-Yeghiayan further concluded that the Government had proven the loss amount by a preponderance of the evidence. *See id.* at 23:15–18.

As for the number of victims of Deptula's scheme, defense counsel elected to rest on the arguments made in his sentencing memorandum. *See id.* at 23:23–24. Judge Der-Yeghiayan overruled the objection, explaining that Deptula had not disputed the number of victims in his plea agreement and had previously identified as victims the "multiple financial institutions issuing the credit card[s] or their assignees." *See id.* at 26:11–21.

Judge Der-Yeghiayan next overruled Deptula's objection to his conviction in No. 14 CR 178 being included in his criminal history category. He noted that the 2014 mortgage fraud case arose from conduct occurring in 2007, while the 2015 wire fraud case "started after that." *See id.* at 27:22–28:5. Furthermore, Judge Der-Yeghiayan explained:

6

> [T]he mortgage fraud case did not involve conduct that was part of the instant offense. It might well be that the [G]overnment was investigating the current case two years prior to May 2014[,] but the mortgage fraud case arose from conduct in 2007[,] well before the commission of the scheme central to the present case and the two are different. Therefore, calculations of the Criminal History Category II is correct.

*Id.* at 30:11–18.

Finally, Judge Der-Yeghiayan considered a variety of factors under 18 U.S.C. § 3553(a), including the nature and scope of the offense; Deptula's role as the leader of the scheme; the fact that he was a deportable alien and would almost certainly be removed from the United States after serving his sentence; his conduct while in custody; and the failing health of his parents in Poland. As for "the need to avoid unwarranted sentence disparities among similar defendants with similar records," *id.* § 3553(a)(6), Judge Der-Yeghiayan noted that "there have been no disparity arguments made by either side." Tr. of Sentencing at 57:17–18, No. 15 CR 188. And concerning the need to deter Deptula from committing similar conduct in the future, Judge Der-Yeghiayan explained that "there is a strong need for deterrence for this defendant based on his prior conduct. . . . [D]efendant was previously convicted for mortgage fraud and that did not deter [D]efendant from orchestrating even during the same time the complex fraud scheme in this case." *Id.* at 58:21–59:1.

Judge Der-Yeghiayan agreed with the sentencing guidelines calculation as proposed by the Government and the PSR and sentenced Deptula to a within-guidelines sentence of 156 months of imprisonment. *Id.* at 63:3–7. The judge did not impose a period of supervised release, because he expected Deptula to be deported

7

following his sentence. *Id.* at 63:7–8. The judge did, however, order restitution in the amount of $3,664,436. *Id.* at 63:9–15.

Following the judgment, Deptula appealed. Through counsel, Deptula argued that the district court had erred by failing to address his objections to the enhancements for using sophisticated means and making misrepresentations in a bankruptcy proceeding. *See United States v. Deptula*, 751 F. App'x 910, 911 (7th Cir. 2018). Additionally, Deptula argued that his sentence was substantively unreasonable. *See id.* The Seventh Circuit rejected both contentions and affirmed Deptula's conviction and sentence. *Id.* at 913–15.

## **Legal Standard**

Section 2255 provides that a criminal defendant is entitled to relief from his conviction and sentence if "the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." 28 U.S.C. § 2255(b). A court may deny a § 2255 motion without an evidentiary hearing if "the motion and the files and records of the case conclusively show" that the defendant is not entitled to relief. *Id.* Relief under § 2255 is available "only in extraordinary situations, such as an error of constitutional or jurisdictional magnitude or where a fundamental defect has occurred which results in a complete miscarriage of justice." *Blake v. United States*, 723 F.3d 870, 878–79 (7th Cir. 2013).

8

## Analysis

Deptula identifies several ways in which he believes his trial counsel's performance violated his Sixth Amendment right to the effective assistance of counsel. First, he contends that counsel should have challenged the length of the proceedings by moving to dismiss the indictment. Second, he raises a host of concerns about his sentencing, including counsel's failure to dispute certain aspects of his guidelines calculation, counsel's failure to argue that his sentence would cause unwarranted sentencing disparities, and counsel's failure to ensure the accuracy of the facts relied on by Judge Der-Yeghiayan at sentencing.

Deptula's claims regarding counsel's effectiveness must satisfy the two-part test of *Strickland v. Washington*, 466 U.S. 668 (1984). First, he must show that counsel's performance was constitutionally deficient, *i.e.*, that counsel's representation "fell below an objective standard of reasonableness" as measured against "prevailing professional norms." *Id.* at 688. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable" as ineffective assistance. *Id.* at 690–91. Second, Deptula must show that any error counsel made prejudiced his defense. *Id.* at 692. Prejudice requires a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

### I. Fed. R. Crim. P. 48(b)

Deptula contends that his counsel—who filed several motions to accelerate the proceedings under the Speedy Trial Act—was ineffective for failing to move for

dismissal of the indictment under Fed. R. Crim. P. 48(b). Under that rule, "if there is unnecessary delay in bringing a defendant to trial, the court may dismiss the indictment, information[,] or complaint." *United States v. Ward*, 211 F.3d 356, 361–62 (7th Cir. 2000) (quoting Fed. R. Crim. P. 48(b)). The rule is "not circumscribed by the Sixth Amendment," but is "driven by the same general considerations." *Id.* (quoting *United States v. Deleon*, 710 F.2d 1218, 1223 (7th Cir. 1983); *United States v. DeLuna*, 763 F.2d 897, 923 (8th Cir. 1985)).

Rule 48(b) applies only to the time period after a defendant's arrest. *United States v. Marion*, 404 U.S. 307, 319 (1971); *Deleon*, 710 F.2d at 1223. Here, Deptula was arrested in April 2015, and by February 2017, had reached a plea deal. Although courts have explained that delays of one year may be considered "presumptively prejudicial," *see Ward*, 211 F.3d at 361–62, dismissal under Rule 48(b) is not ordinarily warranted without "unusual circumstances." *United States v. Clay*, 481 F.2d 133, 137–38 (7th Cir. 1973); *see United States v. Begay*, 602 F.3d 1150, 1155–56 (10th Cir. 2010). Here, where the allegations of fraud were complex and there were a number of co-conspirators, the two-year period between Deptula's arrest and his change of plea hearing was not especially unusual. Additionally, dismissal under Rule 48(b) is discretionary, *see Ware*, 211 F.3d at 361, and given Judge Der-Yeghiayan's denial of Deptula's speedy-trial demands, it is doubtful that the judge would have granted a motion under Rule 48(b).[1] Thus, Deptula cannot establish that he was prejudiced by counsel's failure to bring such a motion.

---

[1] Judge Der-Yeghiayan excluded time under the Speedy Trial Act along the way, indicating that the case was moving forward at a normal speed. Time excluded under 18

10

Deptula's arguments to the contrary conflate his two criminal cases; he contends that the entire time between his arrest in No. 14 CR 178 and his plea in No. 15 CR 188 constitutes an unwarranted delay. Deptula posits that, rather than waiting to charge him in No. 15 CR 188 until after he had served his first sentence, the Government had everything it needed to charge him with wire fraud in April 2014 and, thus, "could have easily superseded the indictment" in No. 14 CR 178 to include the additional charges. Moreover, he argues, the investigation into his fraudulent activities began as early as 2012, subjecting him to significant delay while the Government investigated him and brought the two successive cases against him.

This argument misapprehends the nature of Rule 48(b) which, as noted, applies "post-arrest." *Marion*, 404 U.S. at 319; *Deleon*, 710 F.2d at 1223. As Judge Der-Yeghiayan explained, whether the Government had been investigating Deptula prior to his April 2015 arrest is irrelevant. Counsel did not offer ineffective assistance by failing to move to dismiss the indictment on this basis. *See Faucett v. United States*, 872 F.3d 506, 512 (7th Cir. 2017) ("Refraining from a meritless . . . argument cannot be characterized as objectively unreasonable.").

## II. Pre-Indictment Delay

Still, to the extent Deptula argues that the time from his first arrest to his indictment in No. 15 CR 188 constituted improper delay, he may be raising a claim

---

U.S.C. § 3161(h) is not computed for purposes of determining whether a delay has occurred under the Speedy Trial Act; it would be nonsensical to consider such time for purposes of computing the length of a delay under Rule 48(b). *See Ward*, 211 F.3d 356, 361–62 (explaining that Rule 48(b) is driven by the same general considerations as the Sixth Amendment and the Speedy Trial Act).

of pre-indictment delay under the Due Process Clause. As the Seventh Circuit has explained, "[t]he primary safeguard against unreasonable prosecutorial delay is the statute of limitations," but the Due Process Clause "plays a limited role in assuring that the government does not subject a defendant to oppressive delay." *United States v. Hagler*, 700 F.3d 1091, 1099 (7th Cir. 2012) (quoting *United States v. McMutuary*, 217 F.3d 477, 481 (7th Cir. 2000)). A defendant asserting such a claim must show both that "the delay caused actual and substantial prejudice to his fair trial rights," and that "the government delayed indictment to gain a tactical advantage or some other impermissible reason." *United States v. Sowa*, 34 F.3d 447, 450 (7th Cir. 1994).[2]

As an initial matter, since Deptula's wire-fraud scheme continued until his arrest in April 2014, his charges in 2015 fell well within the five-year statute of limitations, *see* 18 U.S.C. § 3282(a). Still, he contends that the Government's decision to charge him in successive cases prejudiced him by subjecting him to "oppressive pretrial incarceration"; anxiety while he awaited trial on the new charges; impairment of his defense by leaving him "no choice but to plead guilty to the new charges"; and an increase in his criminal history category once he was sentenced on the new charges. Def.'s Mem. Supp. § 2255 Mot. at 17–18, ECF No. 4.

---

[2] The Government contends that Deptula waived constitutional challenges arising out of his indictment by pleading guilty. But "[a] plea of guilty or no contest does not forgive the unconstitutionality of an indictment." *Gomez v. Berge*, 434 F.3d 940, 943 (7th Cir. 2006) (citing *Menna v. New York*, 423 U.S. 61, 63 (1975)). Although Deptula signed a plea agreement waiving all "appellate issues" except for the validity of his plea and sentencing issues, the waiver does not expressly apply to collateral review. *See* Plea Agreement ¶ 23(b), No. 15 CR 188.

Deptula cannot establish that he suffered prejudice as a result of the Government's charging decisions. Rather, as Judge Der-Yeghiayan explained, the offenses underlying the two cases were "unrelated" and occurred during different periods of time. Tr. of Sentencing at 22:23–23:4, No. 15 CR 188. The consequences Deptula suffered from those charges are fairly typical of those experienced by anyone who has been caught committing multiple crimes.

Furthermore, Deptula does not point to any evidence in the record suggesting that the Government had a vindictive motive or purposely delayed the indictment in No. 15 CR 188 for nefarious reasons. Although Deptula contends that the Government had everything it needed to charge him with wire fraud in April 2014, he points to no evidence supporting that assertion. Instead, as the Government explains, the indictment resulted from a complex investigation—involving multiple co-defendants and hundreds of fraudulent transactions—that was ongoing at the time Deptula was charged in No. 14 CR 178. Because the Government had probable cause for both sets of offenses, it was permitted to charge Deptula in either a single case or multiple cases. *See United States v. Ribota*, 792 F.3d 837, 840 (7th Cir. 2015) ("The decision whether to prosecute involves consideration of myriad factors such as the enforcement priorities of the office, the determination as to the strength of the case, the prosecutorial resources available, and the prosecution's general deterrence values, and those factors are ill-suited to judicial review.").

Accordingly, as with his claim under Rule 48(b), Deptula cannot establish that his counsel was ineffective for failing to raise this issue. In fact, counsel *did* raise the

13

issue by filing speedy-trial demands[3] and arguing for a lower criminal history category. Judge Der-Yeghiayan rejected each of these challenges. Counsel's failure to press the issue again at a different time or in a different manner cannot be said to be constitutionally ineffective or to have resulted in prejudice to Deptula. *See Strickland*, 466 U.S. at 692–94; *see also Faucett*, 872 F.3d at 512 (explaining that counsel could not be "faulted for failing to explore a futile defense strategy").

## II. Sentencing Errors

Deptula also argues that his counsel was ineffective for failing to raise various arguments at the sentencing phase. First, he challenges the loss amount calculated by the Government and accepted by Judge Der-Yeghiayan. Deptula contends that his counsel should have challenged the PSR's reliance on information obtained solely from the Government and should have hired an investigator to rebut the Government's calculations. But Deptula points to no reason why another investigator might have come up with a different loss calculation; therefore, he cannot show that he was prejudiced by counsel's omissions. What is more, Deptula's counsel did challenge the loss amount by contending that it should not include transactions attributable to the *Cwynar* defendants. Counsel's strategic decisions about the best arguments as to the loss amount cannot be the subject of an ineffective-assistance claim. *See Strickland*, 466 U.S. at 690.

---

[3] In particular, a speedy-trial motion filed in September 2016 argued that the Government had been investigating Deptula since 2012 and had evidence of his wire fraud as early as 2014. *See generally* Mot. Speedy Trial, ECF No. 226.

14

Next, Deptula argues that his counsel should have elaborated further on his argument that fewer than ten victims were impacted by the crime. Although arguments about this issue were set forth in Deptula's sentencing memorandum, counsel did not elaborate on it at the sentencing hearing. But Judge Der-Yeghiayan still considered the issue on its merits before ruling against Deptula, noting that Deptula had admitted in his plea agreement to having more than ten victims. Deptula cannot establish that additional argument would have changed this result, particularly since he does not seek to invalidate his plea agreement. *See Faucett*, 872 F.3d at 512.

Deptula further argues that his counsel was ineffective for failing to challenge the application of the sophisticated-means enhancement under USSG § 2B1.1(b)(10)(C) or the bankruptcy-misrepresentation enhancement under USSG § 2B1.1(b)(9)(B). Although Deptula reserved the right in his plea agreement to contest these enhancements, his counsel did not do so at sentencing. On appeal, the Seventh Circuit concluded that counsel's omission resulted in waiver of the issues. *See* 751 F. App'x at 913–14. Regardless, Deptula cannot show prejudice from the waiver.

Under USSG § 2B1.1(b)(10)(C), two levels are added to a defendant's offense level for using "sophisticated means," which includes "the use of fictitious entities, corporate shells, or offshore financial accounts." *United States v. Ghaddar*, 678 F.3d 600, 600 (7th Cir. 2012) (citing USSG § 2B1.1 cmt. n.9(B)). Here, Deptula admitted in his plea agreement that he utilized shell corporations and fictitious entities to

effectuate his scheme.  *See* Plea Agr. ¶ 6A, No. 15 CR 188.  Likewise, he admitted that, under his direction, scheme participants discharged fraudulent debts in bankruptcy, *see id.*; thus, Deptula cannot credibly argue that the bankruptcy-misrepresentation enhancement was inappropriate.  *See* USSG § 2B1.1(9)(B) (applying two offense levels for "a misrepresentation or other fraudulent action during the course of a bankruptcy proceeding").  Accordingly, Deptula's counsel was not ineffective for failing to raise these arguments at sentencing.  *See Faucett*, 872 F.3d at 512.

Next, Deptula argues that his counsel offered ineffective assistance by failing to argue that his sentence would result in unwarranted disparities.  Deptula argues that statistics compiled by the United States Sentencing Commission show that (1) 65.8% of all defendants with an offense level of 30 or higher receive sentences below their advisory guidelines ranges; and (2) the average imprisonment imposed for loss amounts between $2.5 million and $9.5 million is 93.5 months (with an average advisory guidelines minimum of 119.1 months).  Again, however, Deptula cannot show that such an argument would have likely persuaded the sentencing judge.  "18 U.S.C. § 3553(a)(6) does not instruct district courts to avoid all differences in sentencing, only *unwarranted* disparities 'among defendants with similar records who have been found guilty of similar conduct.'"  *United States v. Duncan*, 479 F.3d 924, 929 (7th Cir. 2007) (quoting 18 U.S.C. § 3553(a)(6)).  The defendants included in the statistics cited by Deptula are not necessarily comparable to him in either offense conduct or culpability.  In fact, because Deptula's minimum advisory guideline (135

16

months) is higher than the minimum advisory guideline he cites (119.1 months), it is likelier that his situation is *not* comparable to the cases underlying his statistics. And "[s]entencing differences attributable to properly calculated sentencing ranges under the Advisory Guidelines cannot be considered unwarranted disparities under" § 3553(a)(6). *Id.* Accordingly, Deptula cannot establish that his counsel was constitutionally ineffective for failing to raise this issue at sentencing.

Deptula further contends that his counsel failed to correct what he perceives to be Judge Der-Yeghiayan's misunderstanding about the timing of his two cases. At one point during sentencing, Judge Der-Yeghiayan concluded that there was a significant need for the sentence to deter Deptula from further criminal activity, since "[D]efendant was previously convicted for mortgage fraud and that did not deter [D]efendant from orchestrating even during the same time the complex fraud scheme in this case." Tr. of Sentencing at 58:21–59:1, No. 15 CR 188. Deptula argues that Judge Der-Yeghiayan was under the misapprehension that he had committed wire fraud *after* pleading guilty in the 2014 case, which was not the case. But, as the Government points out, at various other points during sentencing, Judge Der-Yeghiayan correctly set forth the timeline of the two cases, noting that the scheme charged in No. 15 CR 188 ended in April 2014, when Deptula was first arrested in No. 14 CR 178. Accordingly, Deptula has not shown that the judge relied on inaccurate information in sentencing him. *See United States v. Corona-Gonzalez*, 628 F.3d 336, 343 (7th Cir. 2010). Nor can he show that his counsel was ineffective for failing to advance a contrary argument. *See Faucett*, 872 F.3d at 512.

Finally, Deptula seems to argue that his sentence was unreasonable because he had no meaningful opportunity to participate in the drafting of his PSR. In his reply brief, however, he acknowledges that he *did* have the opportunity to participate in the PSR process but declined to do so on the advice of counsel. But even if his attorney's advice was flawed in some way, Deptula does not set forth any information he would have offered that could have changed his sentence. Accordingly, Deptula cannot establish that his rights were violated in this respect.

## Conclusion

For the reasons provided in this Memorandum Opinion and Order, Deptula's § 2255 motion [1] is denied. The Court declines to issue a certificate of appealability under Rule 11 of the Rules Governing Section 2255 Proceedings for the United States District Courts. Deptula has not made a substantial showing that reasonable jurists could debate whether his motion should have been resolved in a different manner. 28 U.S.C. § 2253(c)(2); *Narvaez v. United States*, 674 F.3d 621, 626 (7th Cir. 2011) (citing *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000)). Civil case terminated.

**IT IS SO ORDERED.**  ENTERED: 9/30/19

_____
**JOHN Z. LEE**
**United States District Judge**